Floyd E. MUNSON, Appellant,

v.

Thomas P. OTIS et al., Appellees.

No. 13465.

District of Columbia Court of Appeals.

Argued Dec. 1, 1978.

Decided Jan. 17, 1979.

Richard W. Galiher, Washington, D. C., for appellant.

D. Warren Donohue, Rockville, Md., for appellees.

Before NEWMAN, Chief Judge, and KELLY and MACK, Associate Judges.

PER CURIAM:

A jury held Floyd E. Munson liable for injuries suffered by Donna Otis when she fell through the ceiling at his construction site. Munson argues that he had no duty to exercise care toward Mrs. Otis and that he ought not to be held liable for her injuries on that account. We agree and reverse.

Carla and William J. McQuaid hired Munson, a one-man home improvement operation, to renovate their home and add several rooms. In the course of his work, Munson cut through an interior wall at the second story so that steps could be built leading down to a landing in the middle of the existing staircase just below. The landing was beneath the level of both the second story floor and the first story ceiling. Removing the wall left a hole through to the first story. Munson had removed the first story ceiling in the course of his work so the hole was open at both ends and apparent. To get from the landing to the floor just above, a person could step on a post in the wall that was exposed when Munson had cut through and then step across the hole and up to the second story. The wall had been cut at a point below the second story floor but above the first floor ceiling. Although steps were planned to cover this hole they had not been built yet.

The McQuaids had moved out of their house in the course of the work because the renovations were so extensive. The front door was locked and the McQuaids had the only key. Munson and his helpers entered the house by climbing a ladder to a second story window. The McQuaids visited their house almost every day while they were living elsewhere, and they were very familiar with the state of the construction. On occasion, the McQuaids brought friends and neighbors along to inspect, although the record does not indicate whether Munson knew of this practice.

As the work progressed, Munson installed some panels of sheet-rock as the first story ceiling. Sheet-rock is a composite material used for walls and ceilings instead of lattice and plaster. Although it appears sturdy upon casual observation, it will not support

the weight of an average person standing on it. By affixing the sheet-rock panels, Munson covered over the bottom of the hole between the first and second stories. This created the appearance of a step having been built between the landing and the second story, although a person recognizing the sheet-rock probably would not step on it.

On June 3, 1976, the McQuaids invited their friends, Donna and Thomas P. Otis, to see the work in progress when Munson and his helpers were not present. The Otises had visited the McQuaids' house previously during this renovation and had stepped across the hole between the landing and the second story. Usually Mr. McQuaid would straddle the hole, turn, and help his wife and Mrs. Otis across. However, on the June 3 visit, Mr. McQuaid stepped to straddle the hole and turned just in time to see Mrs. Otis drop through to the first floor. She was injured, but the baby she carried in her arms was not.

The Otises sued the McQuaids and Munson, alleging negligence in the failure either to make the premises safe or to warn of the dangerous condition. The jury returned a verdict for plaintiffs against all defendants in the amount of $7,000. The trial judge granted the McQuaids' motion for judgment n. o. v., but he refused a similar motion for Munson who now prosecutes this appeal. The Otises did not appeal the trial court's grant of judgment in favor of the McQuaids.

■    Imposing damages liability on one charged with negligently causing injury to another is founded upon the notion of the actor's culpability—the deviation of his actions from the accepted norms of behavior—and the belief that he could have, and should have, taken steps to avoid the potential injury. *McCord v. Green*, D.C.App., 362 A.2d 720, 724 (1976); *Baker v. D.C. Transit System, Inc.*, D.C.App., 248 A.2d 829, 831 (1969); W. Prosser, Law of Torts §§ 30 & 53 (4th ed. 1971). The burden imposed by law, however, is limited. With certain exceptions descended from the common law— innkeepers and common carriers for exam-

ple—most actors are not held to insure the safety of those with whom they have contact. *See, e. g., Cook v. Safeway Stores, Inc.*, D.C.App., 354 A.2d 507, 508 (1976). The legal duty is not to avoid all risk of injury possibly resulting from one's actions (or omissions), but only the unreasonable risk. *See Spar v. Obwoya*, D.C.App., 369 A.2d 173, 178–79 (1977). The law regarding the scope of foreseeability in this jurisdiction long has stated that "it was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye." *Munsey v. Webb*, 231 U.S. 150, 156, 34 S.Ct. 44, 45, 58 L.Ed. 162 (1913) (Holmes, J.), *affirming*, 37 App.D.C. 185 (1911). This language was quoted in *Kendall v. Gore Properties*, 98 U.S.App.D.C. 378, 387, 236 F.2d 673, 682 (1956), with reference to unforeseen as opposed to unforeseeable injuries and in *Palsgraff v. Long Island R. Co.*, 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928) (Cardozo, C. J.), with reference to unforeseen as opposed to unforeseeable plaintiffs.

■    The courts have dealt with the problem of the unforeseen or unforeseeable plaintiff as reflecting upon either proximate cause or duty. *Compare Spar v. Obwoya, supra* at 178, *with Graham v. Safeway Stores, Inc.*, 316 A.2d 582, 584 (1974) (both cases deal with the foreseeability of the harm inflicted). The choice in many cases is between vocabularies since the fundamental analysis appears to remain constant. Prosser, *supra* § 43, at 256 & n.70. Regardless of whether we speak of an attenuated chain of cause and effect, *Wagshal v. District of Columbia*, D.C.App., 216 A.2d 172, 174–75 (1966), or the actor's obligation toward the party he may injure, *Baker v. D.C. Transit System, Inc., supra* at 831, we must look to the actor's culpability, the ability to foresee the harm resulting from his actions, and the reasonableness of the precautions he should have taken as some of the factors suggesting whether it is reasonable to hold this defendant liable for this injury. *Cook v. Safeway Stores, Inc., supra* at 509–10, quoting *Goldberg v. Housing Auth. of City of Newark*, 38 N.J. 578,

583, 186 A.2d 291, 293 (1962). "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation [of the action to the injury]; it is risk to another or others within the range of apprehension." *Palsgraff, supra* at 344, 162 N.E. at 100.

In the case before us, Munson had no reason to believe that someone might suffer injury by failing to recognize that the sheet-rock panel would not hold his weight. The McQuaids had moved out of their house for the duration of the heavy construction, and they controlled the regular access to the premises. Munson had no duty to warn persons of the danger if he had no basis of knowing they were going to be there. Neither can plaintiffs show that Munson owed a duty to warn Mrs. McQuaid that inures to Mrs. Otis' benefit because the McQuaids were frequent visitors during the course of the renovation and were very familiar with the progress and the particular hazards created in this construction. Munson had no duty to warn someone who had actual notice of the danger. Given the dangers inherent in any construction site, the McQuaids' control over the regular means of access, and the fact that unnotified individuals were accompanied by the owners who had actual notice of the dangers, we are unable to find that Munson owed any duty of notice to appellants.

*Reversed.*