Sharon Pratt KELLY, et al., Appellants/Cross–Appellees,

v.

PARENTS UNITED FOR THE DISTRICT OF COLUMBIA PUBLIC SCHOOLS, Appellees/Cross–Appellants.

Nos. 90–CV–1130, 90–CV–1158 & 92–CV–1126.

District of Columbia Court of Appeals.

Argued Jan. 11, 1994.
Decided April 21, 1994.
As Amended May 5, 1994.

Donna M. Murasky, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the briefs were filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellants/cross-appellees.

Leslie J. Cloutier, with whom G. Brian Busey, Roderic V.O. Boggs, and Mary M. Levy, Washington, DC, were on brief, for appellees/cross-appellants.

Before FERREN*, Acting Chief Judge, SCHWELB, Associate Judge, and PRYOR, Senior Judge.

*Judge FERREN was an Associate Judge of this court at the time of argument. His status

**FERREN, Acting Chief Judge:**

In August 1989, Parents United for the D.C. Public Schools[1] brought suit to enforce the District of Columbia Public School Nurse Assignment Act of 1987, D.C.Code § 31–2421 et seq. (1988), requesting both declaratory and injunctive relief.[2] The Nurse Assignment Act requires the District to assign a registered nurse to each elementary and secondary school for a specified number of hours per week and, further, to assign either a registered nurse or a certified athletic trainer to attend every school-sponsored athletic event. Parents United alleged that (1) the District had violated the Nurse Assignment Act, which Parents United had an implied private right of action to enforce, and that (2) the District's failure to implement that Act violated not only the Act itself but also the due process clause of the Constitution, permitting recovery under 42 U.S.C. § 1983 (1982).[3]

The trial court granted summary judgment for Parents United on both the statutory and the constitutional[4] claims, granted permanent injunctive relief ordering compliance with both requirements of the Act, and awarded Parents United attorney's fees pursuant to 42 U.S.C. § 1988 (1982).[5] We agree

that Parents United has an implied private right of action to enforce the Nurse Assignment Act and that the District violated that Act. We therefore affirm summary judgment under the Act and the trial court's permanent injunction. Because, however, this private right of action—providing a complete remedy in the District's courts—gives Parents United all the process that is due, we must conclude that Parents United has not been deprived of a property right without due process of law and, as a result, cannot recover under 42 U.S.C. § 1983. We therefore must reverse the trial court order awarding attorney's fees under 42 U.S.C. § 1988. See *supra* note 5.

## I. The Nurse Assignment Act of 1987

The Council of the District of Columbia enacted the Nurse Assignment Act in 1987 in an effort to remedy the severe shortage of nurses in the District's public schools, as well as the lack of medical personnel at school-sponsored athletic events. *See* COUNCIL OF THE DISTRICT OF COLUMBIA, COMM. ON HUMAN SERVS., REPORT ON BILL 7–47, THE DISTRICT OF COLUMBIA PUBLIC SCHOOL NURSE ASSIGN-MENT ACT OF 1987, at 2–3 (June 11, 1987) (hereafter REPORT ON BILL 7–47). The Act provided:

changed to *Acting Chief Judge* on March 18, 1994.

1. Parents United for the D.C. Public Schools is a private organization that seeks to improve the District's public school system. Parents of several children who attend the District's public schools joined Parents United as plaintiffs. We refer to all plaintiffs, collectively, as "Parents United."

2. Parents United originally named the District of Columbia, the Mayor, and the Director of the Department of Human Services as defendants. Beginning with fiscal year 1991, the Council of the District of Columbia transferred the responsibility for implementing the Nurse Assignment Act from the Department of Human Services to the Board of Education. *See* D.C.Code § 31–2421(g) (1993). As a result, Parents United added the Board of Education and the Superintendent of Schools as defendants at that time. We refer to all defendants, collectively, as "the District."

3. 42 U.S.C. § 1983 (1982) provides in part:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen

of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

4. Although the trial court concluded that the District had violated § 1983 by failing to provide adequate nursing services in the schools, it found no § 1983 violation for the District's failure to provide nurses at school-sponsored athletic events. The court reasoned that, because the District had submitted a budget necessary to comply with the provisions of the Act regarding athletic events, the administrative failure to implement these provisions was not "a deliberate disregard of the state's fundamental process" amounting to a § 1983 violation.

5. 42 U.S.C. § 1988 (1982) provides in part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

(a) A registered nurse shall be assigned to each District of Columbia ("District") elementary and secondary public school a minimum of 12 hours per week during each semester and during summer school if a summer school program is operated.
(b) The minimum hours per week of registered nurse services at each school shall increase from 12 to 16 hours per week beginning 1 year after December 10, 1987. The minimum hours per week of registered nurse services at each school shall increase from 16 to 20 hours per week beginning 2 years after December 10, 1987.

D.C.Code § 31–2421(a), (b) (1988).[6] The Act also explained that medical services would be provided at all school-sponsored athletic events:

(d) A registered nurse, a certified athletic trainer, or both shall be present at all athletic events sponsored by the District elementary or secondary public schools that occur in the District. These medical services shall be in addition to the minimum hours of registered nurse services required by subsection (a) or (b) of this section.

D.C.Code § 31–2421(d) (1988). Furthermore, the Act initially provided that "[s]ufficient funds to carry out the requirements of this section are authorized to be appropriated out of the general revenues of the District." D.C.Code § 31–2421(e) (1988).

In 1990, the Council amended § 31–2421(e) to stress the need for mandatory funding. It was relettered as subsection (f) and now reads: "Sufficient funds to carry out the requirements of this section *shall be appropriated* out of the general revenues of the

District." D.C.Law 8–149 (July 25, 1990), D.C.Code § 31–2421(f) (1993) (emphasis added); *see* 37 D.C.Reg. 2208–10 (1990). The Council also added provisions governing the types of medical personnel to be provided at particular athletic events. *See* 37 D.C.Reg. at 2208–09.[7] Finally, the Council added subsection (g), which transferred the responsibility for implementing the Act from the Department of Human Services to the Board of Education. *See* 37 D.C.Reg. at 2209, 3718; D.C.Code § 31–2421(g) (1993).

Although the 1990 amendments of the Nurse Assignment Act re-emphasized the Council's desire to place and maintain nurses in the schools and at athletic events, the Act was never fully implemented. The trial court found that (1) "[s]ince the enactment of the Act, there have been a maximum of 54 nurses working in the public schools" and that (2) "[f]ifty-one additional school nurses would need to be hired in order for defendants to be in compliance with the Amended Act." The District never contested this finding. Although the District's 1991 budget provided $454,700 for the hiring of fourteen certified athletic trainers needed to comply with the Act's provisions for medical coverage at school-sponsored athletic events, that budget did not provide funding for the additional school nurses necessary to comply with the school nurse provisions.

## II. *Proceedings to Date*

Frustrated by the "egregious and continuing violation of the Nurse Assignment Act," Parents United brought suit in the Superior Court in August 1988 seeking both declaratory and injunctive relief.[8] In September 1989, Parents United amended its complaint to

---

**6.** D.C.Code § 31–2421(c) (1988) elaborated:

(c) Any school that, on May 1, 1987, exceeded the standards for registered nurse services prescribed by subsection (a) or (b) of this section shall continue that level of service, or the level prescribed by subsection (a) or (b) of this section, whichever is greater. No reduction shall be made in the level of registered nurse services at any school except in response to a reduced need based on a reduced student enrollment or a reduced proportion of students requiring special services because of handicapping conditions.

**7.** These provisions were amended once again in 1990, *see* 37 D.C.Reg. 3717 (1990), and are now codified in D.C.Code § 31–2421(d) and (e) (1993).

**8.** Parents United also claimed that the District's "gross noncompliance with the Nurse Assignment Act and its proposed cuts in the base budget for school programs under the Nurse Assignment Act" violated the District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501 *et seq.* (1992). Parents United voluntarily dismissed this claim without prejudice on September 19, 1990.

allege that the District defendants had "denied plaintiffs their right to procedural due process under the fifth amendment of the U.S. Constitution in violation of [42 U.S.C. § ] 1983." Parents United added that the Nurse Assignment Act had created a justifiable expectation that "children would receive certain minimal levels of care from registered nurses and certified athletic trainers during the school year" and that, while acting under color of District of Columbia law "[w]ithout giving plaintiffs notice or an opportunity to be heard, defendants deprived plaintiffs' children of the medical care to which they are entitled." In addition to the relief requested in the original complaint, Parents United asked for an award of reasonable attorney's fees and costs under 42 U.S.C. § 1988, see *supra* note 5, in its amended prayer for relief.

### A. *Preliminary Injunction*

Parents United moved for a preliminary injunction in October 1989. Judge Nan (Huhn) Shuker applied the test in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), to conclude that the Nurse Assignment Act created an implied private right of action. She issued a preliminary injunction to enforce the Act's requirement of medical coverage for school-sponsored athletic events, the lack of which she found "unequivocally" caused irreparable harm. But she did not grant injunctive relief to cure the general lack of school nurses. Neither party appealed Judge Shuker's ruling. More than two months after Judge Shuker issued the preliminary injunction, the District complied by providing the required medical services at school-sponsored athletic events.

### B. *Summary Judgment*

In February 1990, Parents United moved for summary judgment. The District did not contest Parents United's contentions that the District had never complied with the Nurse Assignment Act and that the Act created an implied private right of action to enforce compliance. Instead, the District argued that declining school enrollment and requested school closings may have put the District in compliance under D.C.Code § 31–2421(c) (1988 & 1990 Supp.), see *supra* note 6, and that the shortage of registered nurses may have created a situation where it would be impossible, in any event, for the District to comply with the Act. Judge Taylor, rejecting the District's arguments as speculative and hypothetical, concluded:

In sum, there are no genuine issues of material fact regarding defendants' compliance with the school nursing hours requirement of the Amended Act, and plaintiffs are entitled to judgment on that aspect of the Amended Complaint as a matter of law.

As for the Nurse Assignment Act provisions requiring medical services at school-sponsored athletic events, the trial court found that the District had met the requirements of the Act as of April 4, 1990:

Thus, with regard to the requirement for medical coverage of athletic events, there are no genuine issues of material fact: defendants were violating the law until the court preliminarily enjoined them to comply with it; they currently are in compliance, under the continuing pressure of that court order.

Under those circumstances, plaintiffs contend—and defendants do not dispute— that continued injunctive relief is appropriate and necessary to ensure defendants' continued compliance. The Court agrees.

The trial court accordingly issued a permanent injunction on August 3, 1990, ordering the District to comply with both requirements of the Act.

The trial court then addressed Parents United's constitutional claim, concluding that the Nurse Assignment Act created an entitlement that amounts to a significant property interest. More specifically, the court concluded, first, that "[p]laintiffs are entitled to the assignment of a registered nurse to the D.C. Public Schools for a minimum of 20 hours per week during each semester and during summer school if a summer school program is operated." The court concluded that this "entitlement cannot be withdrawn without procedural due process," and that "[d]efendants' failure *ever* to comply with §§ (a) and (b) of either the Act or the

Amended Act deprives plaintiffs of that entitlement, and does so without affording them any 'process' whatsoever." The court accordingly held that the District had *"deliber-ate[ly] disregard[ed]* ... the state's *funda-mental* process," as articulated in *Silverman v. Barry,* 269 U.S.App.D.C. 327, 334, 845 F.2d 1072, 1079 (1988), *cert. denied,* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988), by repeatedly disregarding the law for more than four years and by submitting a budget that would not permit compliance with the Act. The trial court concluded, as a result, that Parents United was entitled to relief under 42 U.S.C. § 1983.

Next, the trial court concluded that the statutory provisions mandating medical coverage of school-sponsored athletic events were also sufficiently specific to create significant property interests. Because, however, the District eventually had complied with the Act and had provided for future compliance in the District's budget, the court concluded that the property deprivation was not sufficiently deliberate to qualify for relief under § 1983. See *supra* note 4.

Because the trial court found one § 1983 violation, the court awarded Parents United reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988. See *supra* note 5.

### C. *Contempt Proceedings*

Despite the clarity of Judge Taylor's August 3, 1990 order, the District continued to violate the Nurse Assignment Act. In fact, the District did not fully comply with the Act until the end of February 1992, almost four months after Judge Wertheim had held the District in civil contempt on November 5, 1991. Judge Wertheim had said that he would consider ordering school closures and incarceration with work release for responsible District officials as possible sanctions. On March 3, 1992, Judge Wertheim confirmed the District's substantial compliance.

### D. *Attorney's Fees*

On November 7, 1990, Parents United had submitted an Interim Application for Reasonable Attorneys Fees and Costs for the period from July 25, 1989 through September 29, 1990 pursuant to Judge Taylor's August 3, 1990 order. This was supplemented with a request for fees incurred between September 29, 1990 and December 27, 1990. On March 13, 1992, Parents United moved for a supplemental award of fees and costs incurred between March 1991 and March 1992, the time during which it monitored the District's compliance efforts and successfully prosecuted the District's contempt proceeding.

On August 19, 1992, Judge Wertheim granted Parents United's requests for costs and attorney's fees. Although the District continues to contest the award of attorney's fees under 42 U.S.C. § 1988, it agrees that the award of fees to Parents United was warranted for the period of the contempt proceedings.

### III. *Implied Private Right of Action Under the Nurse Assignment Act*

■ The District argues that the Nurse Assignment Act does not create an implied private right of action.[9] In *In re D.G.,* 583 A.2d 160, 166 (D.C.1990), we applied the three relevant factors in the four-part test established in *Cort,* 422 U.S. at 78, 95 S.Ct. at 2087–88, to determine whether a statute creates an implied private right of action.[10] Under *Cort,* the court must determine:

---

9. Parents United argues that the District is estopped from arguing this issue because, in the District's motion to stay the appeal pending entry of the attorney's fee order, it had said it did not intend to challenge the trial court's ruling that the Nurse Assignment Act created an implied private right of action. In a footnote of its appellate brief, however, the District explains: "Upon more careful consideration, we have changed our minds and we now proceed on the basis of our unrestricted notice of appeal of the final order entered by Judge Taylor." Because the District's first notice of appeal filed on September 5, 1990 was unrestricted, and because, as elaborated below, the issue of an implied right of action is relevant to resolution of the § 1983 claim, we do not recognize an estoppel bar here.

10. We explained in *In re D.G.* that "[t]he fourth [*Cort*] factor, whether the cause of action (if any) is 'traditionally relegated to state law ... so that it would be inappropriate to infer a cause of action based solely on federal law,' 422 U.S. at 78, 95 S.Ct. at 2088, is not applicable ..." when a federal statute is not at issue. *In re D.G.,* 583 A.2d at 166 n. 9.

First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted ...? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). In this case, each of these criteria is met.

First, without question, Parents United represents the class for whose especial benefit the Council enacted the Nurse Assignment Act. According to the legislative history:

Many District public school students come from low-income households.... These students can greatly benefit from the availability of health care services in their schools.

 \* \* \* \* \* \*

Closely related to the shortage of nursing services during school hours is the issue of health personnel at school-sponsored athletic events.... Injuries to students which need immediate medical attention are not unusual at any type of physical competition.... Medical personnel trained in sports medicine would be able to advise students participating in sports how to best avoid injuries, and also be present at events to assure proper care is given to an injured student until a physician or an ambulance arrives.

REPORT ON BILL 7–47, at 3. The Council accordingly enacted the Nurse Assignment Act for the primary benefit of the children attending the District's public schools—"the class for whose *especial* benefit the statute was enacted," *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088, and on whose behalf Parents United filed this suit.

Second, we examine whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to

deny one." *Id.* This has become the most important factor of the *Cort* inquiry. *See Suter v. Artist M.,* —— U.S. ——, ——, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992) ("The most important inquiry here ... is whether Congress intended to create the private remedy sought by the plaintiffs."); *see also Edwards v. District of Columbia,* 261 U.S.App. D.C. 163, 166–67 n. 4, 821 F.2d 651, 654–55 n. 4 (1987) (intent of legislature is most important *Cort* factor).

Unlike other provisions of the District of Columbia Code,[11] the Nurse Assignment Act does not expressly authorize private individuals to enforce the Act. Nor does it expressly prohibit private enforcement. In fact, the Nurse Assignment Act does not contain any provision for enforcement of the Act. In *Cort,* the Supreme Court indicated that such silence would leave room for an implied private remedy:

[I]n situations in which it is clear that [the statute] has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action, although an explicit purpose to *deny* such cause of action would be controlling.

*Cort,* 422 U.S. at 82, 95 S.Ct. at 2090 (footnote omitted).

The District argues, however, that a more recent Supreme Court decision, *Suter v. Artist M.,* —— U.S. at ——, 112 S.Ct. at 1370, eclipses *Cort,* requiring Parents United to demonstrate an explicit legislative intent to create a private cause of action. We disagree. In *Suter,* the Court did not abandon the *Cort* test; it merely applied it in a manner that emphasized the second, "legislative intent" factor. *See id.*

More specifically, in *Suter,* the Court addressed the question whether the clause of the federal Adoption Assistance and Child Welfare Act requiring "reasonable efforts" to reunite the family—as one of the conditions

---

11. For example, the Youth Residential Facilities Licensure Act, D.C.Code § 3–808(d)(1) (1988), governing foster homes in the District, provides:

Notwithstanding the availability of any other remedy, a resident, any person acting on or in behalf of a resident, or the licensee or administrator of a facility may bring an action in court for mandamus to order the Mayor, a District government agency, or the youth residential monitoring committee to comply with this chapter....

for federal assistance to state agencies responsible for investigating charges of child abuse and neglect—created a private right of action against the state agency for persons whose parental rights had been terminated. A major portion of the Court's opinion focused on the fact that an implied private right of action was not necessary to put teeth in the "reasonable efforts" clause because the Act provided for other enforcement mechanisms.[12] The Court noted, for example, that detailed regulations required the state to submit a plan to the Secretary of Health and Human Services before federal funding would be approved. The regulations also required the state plan to include a provision for the state agency to make reasonable efforts to avoid removing a child from his or her home before the agency agreed to placement in foster care, and also to make reasonable efforts to assure the child's return to the home after placement in foster care. *Id.* —— U.S. at ——–——, 112 S.Ct. at 1364–69. Because the Act clearly permitted the Secretary to withhold funding for a state program that did not comply with the "reasonable efforts" clause, whereas the Act did not expressly provide a private cause of action, the Court concluded "that Congress did not intend to create a private remedy for enforcement of the 'reasonable efforts' clause." *Id.* —— U.S. at ——, 112 S.Ct. at 1370.

Unlike the Adoption Assistance and Child Welfare Act at issue in *Suter,* the Nurse Assignment Act provides no means of enforcement whatsoever unless a private right of action is implied. *See Fountain v. Kelly,* 630 A.2d 684, 690 (D.C.1993) (Social Security Act does not create implied private right of action for homeless residents placed in inadequate housing because specified remedy is revocation of federal financial assistance to District agency charged with providing emergency shelters, and nothing in Act or its legislative history suggests there is also private civil remedy). Moreover, the District has no attorney general to enforce compliance. Given the mandatory nature, as well as the specificity, of the Act's substantive requirements and funding provisions, we are

persuaded that the Council did not intend the Nurse Assignment Act to be unenforceable by anyone other than the Council itself. *See Franklin v. Gwinnett County Pub. Sch.,* —— U.S. ——, ——, 112 S.Ct. 1028, 1033, 117 L.Ed.2d 208 (1992) ("[W]here there is a legal right, there is also a legal remedy") (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES 23 (1783)); *see also Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803).

Finally, *Cort* conditions recognition of a private right of action on its being "consistent with the underlying purposes of the Legislative scheme." *Cort,* 422 U.S. at 78, 95 S.Ct. at 2088. The underlying purpose of the Nurse Assignment Act is to make medical services available to students in the District's public schools. *See* REPORT ON BILL 7–47. This was not accomplished until Parents United brought suit. Plainly, therefore, a private right of action is consistent with the underlying purposes of the Act.

We conclude, accordingly, that the three applicable *Cort* criteria are met and that the Nurse Assignment Act thus creates an implied private right of action. Furthermore, because the District conceded that it had never complied with the Nurse Assignment Act and has raised on appeal only the issue of whether the Nurse Assignment Act creates an implied private right of action, it follows that the trial court properly granted summary judgment for Parents United on the Nurse Assignment Act claim, as well as permanent injunctive relief mandating compliance.

## IV. *Section 1983 Claim*

 By successfully pursuing a private right of action under the Nurse Assignment Act, Parents United has obtained all the substantive relief it is entitled to receive. Accordingly, there would be no need to reach the constitutional issues under 42 U.S.C. § 1983, but for the fact that a successful § 1983 claim would justify a discretionary award of attorney's fees under 42 U.S.C. § 1988, *supra* note 5, which Parents United

---

**12.** The Court addresses this issue in its discussion of the § 1983 claim; however, the § 1983 claim is closely related to whether a private right

of action should be implied. *See Suter,* —— U.S. at ——–——, 112 S.Ct. at 1368–70.

would not otherwise be entitled to receive. We therefore must deal with § 1983 because Judge Taylor awarded attorney's fees.

To establish liability under 42 U.S.C. § 1983, see *supra* note 3, Parents United must show that (1) the District deprived it of a right, privilege, or immunity secured by the Constitution, and that (2) this deprivation was effected under color of state law. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Because the District acknowledges that its actions as to the Nurse Assignment Act were taken under color of state law, only the first element is at issue here.

Parents United contends, and the trial court held, that the children Parents United represents were deprived of a property right protected by the due process clause of the Fifth Amendment. Parents United argues that the statutory language of the Nurse Assignment Act is sufficiently specific to give students in the District's public schools a legitimate claim of entitlement to registered nurses in their schools for at least twelve hours a week and to a registered nurse or a certified athletic trainer at all school-sponsored athletic events that occur in the District. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.... He [or she] must, instead, have a legitimate claim of entitlement to it.").[13]

To satisfy the *Roth* test Parents United relies, more particularly, on the following language of the statute: "A registered nurse *shall be assigned* to each ... public school a minimum of 12 hours per week ...", D.C.Code § 31–2421(a) (1988) (emphasis added), and "[a] registered nurse, a certified athletic trainer, or both *shall be present* at all athletic events sponsored by the District....", D.C.Code § 31–2421(d) (1988) (emphasis added). Moreover, since July 25, 1990, the statute has provided that "[s]ufficient funds to carry out the requirements of this section *shall be appropriated....*"

D.C.Law 8–149 (July 25, 1990), D.C.Code § 31–2421(f) (1993) (emphasis added). Instead of creating a mere hope for benefits, therefore, the Nurse Assignment Act arguably gave students in the District's public schools a property interest that could not be withheld without due process of law—an argument Parents United supports by reference to Supreme Court decisions such as *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 11–12, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978) (because Tennessee law provides that public utility may only terminate service "for cause," consumers have a " 'legitimate claim of entitlement' within the protection of the Due Process Clause"); *Goss v. Lopez,* 419 U.S. 565, 572–76, 95 S.Ct. 729, 735–37, 42 L.Ed.2d 725 (1975) (Ohio law providing for free education to all children between ages of five and twenty-one gives children legitimate claim of entitlement to public education); and *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (statute defining eligibility for welfare benefits gives recipients claim of entitlement to welfare payments).

The Fifth Amendment, of course, does not prohibit all deprivations of property; it prohibits only deprivations made *"without due process of law." See Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). The Supreme Court has explained:

> The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

*Zinermon,* 494 U.S. at 126, 110 S.Ct. at 983. The question, therefore, is whether Parents

---

**13.** In *Roth,* the Supreme Court reversed summary judgment for a nontenured faculty member who claimed that his university employer, in declining to renew his teaching contract without a hearing, had deprived him of a liberty or property interest without due process of law.

United's private right of action to enforce the Nurse Assignment Act, at a time it had not yet been implemented, was "constitutionally adequate," *id.*, to satisfy the demands of due process, or whether some additional process is required for protection of entitlements under that Act.

We assume, solely for the sake of argument, that the Nurse Assignment Act creates a property interest—*i.e.*, that it literally entitles students in every District public school to a property interest in the form of a registered nurse for at least twelve hours a week and to a registered nurse or a certified athletic trainer at every school-sponsored athletic event. We therefore turn directly to the kinds of constitutional protections of property interests that are traditionally afforded by due process.

Overall, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). Due process is a "flexible concept that varies with the particular situation."

*Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984. To help lower courts determine what type of procedural protection is constitutionally required in a particular instance, the Supreme Court in *Mathews* has generally required "consideration of three distinct factors." *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

Typically, *Mathews* analysis has been applied to determine whether someone whose entitlement is at risk, or has been withheld, has a right to a predeprivation hearing[14] or instead will be protected, to the extent required by due process, through "a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation." *Zinermon,* 494 U.S. at 128, 110 S.Ct. at 984.[15] This case, if

---

**14.** In *Zinermon,* 494 U.S. at 127, 110 S.Ct. at 984, the Supreme Court noted that, when applying the *Mathews* test, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See, e.g., Zinermon,* 494 U.S. at 115, 110 S.Ct. at 977–78 (medicated and disoriented person entitled under 42 U.S.C. § 1983 to predeprivation hearing before civil commitment as "voluntary" mental patient); *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (predeprivation hearing required before termination of employment); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1156–57, 71 L.Ed.2d 265 (1982) (state may not terminate physical handicap discrimination claim before affording claimant hearing on merits); *Parham v. J.R.,* 442 U.S. 584, 606–607, 99 S.Ct. 2493, 2506, 61 L.Ed.2d 101 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital); *Memphis Light,* 436 U.S. at 18, 98 S.Ct. at 1564–65 (hearing required before cutting off utility service); *Goss,* 419 U.S. at 579, 95 S.Ct. at 738 (informal hearing required before suspension of students from public school); *Wolff v. McDonnell,* 418 U.S. 539, 557–558, 94 S.Ct. 2963, 2975–2976, 41 L.Ed.2d 935 (1974) (hearing required before for-

feiture of prisoner's good-time credits); *Fuentes v. Shevin,* 407 U.S. 67, 80–84, 92 S.Ct. 1983, 1994–96, 32 L.Ed.2d 556 (1972) (hearing required before issuance of writ allowing repossession of property); *Goldberg,* 397 U.S. at 264, 90 S.Ct. at 1018–19 (hearing required before termination of welfare benefits).

**15.** In *Zinermon,* 494 U.S. at 128, 110 S.Ct. at 984, the Supreme Court pointed out that "[i]n some circumstances ... the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." Similarly, in *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158, the Court has indicated that "the necessity of quick action by the State or the impracticality of providing any predeprivation process" may mean that a postdeprivation remedy is constitutionally adequate. Again, in *Memphis Light,* 436 U.S. at 19, 98 S.Ct. at 1565, the Court has said that "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures ... are sufficiently reliable to minimize the risk of erroneous determination," prior hearing may not be required. *See, e.g., Ingraham v. Wright,* 430 U.S. 651, 682, 97 S.Ct. 1401, 1418, 51 L.Ed.2d 711 (1977) (hearing not required before corporal punishment of junior high school students);

not unique, is unusual in that the state-created entitlement at issue—a specified level of nurses and athletic trainers in the public schools—has been authorized, even mandated, by law but never provided. Thus, at this time in the history of the Nurse Assignment Act, we do not have the typical case of a proposed cut-off of an ongoing benefit for which a predeprivation hearing would be feasible, or even the case of an adverse action of some kind for which a postdeprivation hearing would provide adequate relief. Parents United, for example, has not complained that particular nurses already in place, below the level required by statute, have been withdrawn from the schools. Unlike such situations, we deal here with a case entirely of alleged—and uncontested—omission, where the only effective relief possible is a mandatory injunction to implement the dormant local statute—precisely the relief afforded Parents United through the Nurse Assignment Act's implied private right of action successfully brought here. Indeed, Parents United itself proffers no other remedy, aside from a right, claimed in its brief, to "participation as citizens in the legislative process if

the District attempted to amend or repeal the Act" (a right available in any event to all citizens as lobbyists and participants in legislative hearings).[16]

In short, in applying the second *Mathews* factor, we conclude that there will be no "probable value," indeed no value whatsoever, in providing "additional or substitute procedural safeguards" in this case—beyond the right to bring a private enforcement action—to reduce or eliminate "the risk of an erroneous deprivation" of children's property interests in the required assignment of school nurses and athletic trainers. As a consequence, the other two *Mathews* factors become irrelevant.

We are not relying here on a required exhaustion of state remedies.[17] Nor are we relying on cases where state tort remedies are held to satisfy due process because a predeprivation hearing either is impossible (*i.e.,* the deprivation was unauthorized and unpredictable),[18] or is otherwise inappropriate (*i.e.,* a *Mathews* analysis indicates the costs of a predeprivation hearing would outweigh the benefits).[19] Rather, (1) we simply

*Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 619–620, 94 S.Ct. 1895, 1906, 40 L.Ed.2d 406 (1974) (hearing not required before issuance of writ to sequester debtor's property).

**16.** Parents United acknowledges that the legislature can eliminate a statutory entitlement at any time simply by amending the statute. *See Logan,* 455 U.S. at 432, 102 S.Ct. at 1156 (state may eliminate its statutorily created causes of action altogether "just as it can amend or terminate its welfare or employment programs"); *Taylor v. Ledbetter,* 818 F.2d 791, 800 (11th Cir.1987) ("Since the child's claim under *Roth* is a procedural due process claim, the state of Georgia may alter its statutes and ordinances in such a way as to change or eliminate the expectation on which this child had a right to rely."), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1337, 103 L.Ed.2d 808 (1989).

**17.** *See Easter House v. Felder,* 910 F.2d 1387, 1406 (7th Cir.1990) (§ 1983 action not foreclosed simply because state provides alternative forum for relief; however, alternative relief may furnish adequate due process, leaving no basis for § 1983 action), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991); *Campo v. New York City Employees' Retirement Sys.,* 843 F.2d 96, 103 (2d Cir.1988) (conclusion that "a state may provide procedural due process in either an administrative or a judicial setting"

does not "offend the doctrine of nonexhaustion of state remedies"), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1988); *Vicory v. Walton,* 721 F.2d 1062, 1064 n. 3 (6th Cir.1983) (exhaustion of state remedies does not "stand for the general proposition that a person seeking to state a claim under § 1983 for a *deprivation of property without procedural due process* need not plead and prove that post-deprivation procedures and remedies available under state law were deficient"), *cert. denied,* 469 U.S. 834, 105 S.Ct. 125, 83 L.Ed.2d 67 (1984).

**18.** *See Hudson v. Palmer,* 468 U.S. 517, 530–36, 104 S.Ct. 3194, 3202–05, 82 L.Ed.2d 393 (1984) (where correctional officer intentionally took prisoner's property, state was not in position to provide predeprivation procedure because action was random and unauthorized; availability of state remedy satisfied due process); *Parratt v. Taylor,* 451 U.S. 527, 535–44, 101 S.Ct. 1908, 1912–17, 68 L.Ed.2d 420 (1981) (predeprivation procedure impossible where loss of prisoner's hobby kit was caused by negligent, random act unauthorized by state; availability of state remedy provided adequate due process), *overruled in part not relevant here, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

**19.** *See Ingraham,* 430 U.S. at 674–82, 97 S.Ct. at 1414–18 (public schools not required to hold public hearings before inflicting corporal punish-

note that existing state remedies often are sufficient to assure constitutional due process for a variety of reasons, see *supra* notes 18 and 19; (2) we conclude in this case that no other, additional kind of remedy will provide any greater, more expedient protection of Parents United's presumed property interest in school nurses than the injunctive relief the Act permits; and thus (3) we hold that because local, District of Columbia procedures are "constitutionally adequate," *Zinermon*, 494 U.S. at 125–26, 110 S.Ct. at 984, there is no § 1983 violation here. The most essential element of due process has been met; Parents United has had the "opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 333, 96 S.Ct. at 902, by successfully obtaining the maximum—and only—meaningful relief: summary judgment and a permanent injunction.[20]

## V.

We affirm the portion of the trial court's order holding that Parents United has an implied private right of action under the Nurse Assignment Act; that the District has violated the "school nursing hours requirement" of that Act; that the District had been violating the statutory "requirement for medical coverage of athletic events" until the court entered a preliminary injunction requiring compliance; and that Parents United accordingly is entitled to summary judgment and a permanent injunction mandating compliance with both requirements of the Act. Absent a violation of 42 U.S.C. § 1983, however, we reverse the portion of the trial court's order granting summary judgment under § 1983 and awarding attorney's fees under 42 U.S.C. § 1988, without prejudice to the uncontested award of attorney's fees to Parents United for the contempt proceedings.

*Affirmed in part, reversed in part, and remanded.*

SCHWELB, Associate Judge, concurring in the result:

I agree with the majority that the Nurse Assignment Act may be enforced by a civil action such as that brought by Parents United. I also agree that the District's violation of local law did not constitute a denial of property without due process of law, and that Parents United therefore is not entitled to an award of counsel fees. In my opinion, however, the majority's analysis of the question whether the Act creates a private right of action tends to understate the differences between this case and the authorities relied on by Parents United, and makes the issue somewhat closer and more complicated than it actually is. I also think it appropriate to explicate more forcefully what I view as the fundamental incompatibility between Parents United's purported constitutional claim and basic principles of federalism. Accordingly, although I agree with much of what Acting Chief Judge FERREN has written, I join the judgment of the court but not its opinion.

## I.

My colleagues would determine whether Parents United has a right to bring a civil action against the District under the Nurse Assignment Act by applying the principles set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Cort* and its progeny, however, dealt with statutory enactments different in a critical respect from the

---

ment on students; availability of common law tort actions for excessive force satisfied due process).

**20.** In announcing the result here, we do not effectively address how § 1983 would apply to Nurse Assignment Act violations in different, hypothetical situations. Suppose, for example, that the District complies with the act for a period of time and then violates it by reducing nurses or athletic trainers below the levels, and in violation of standards and procedures, required by statute. *See* D.C.Code § 31–2421(c), *supra* note 6 (setting forth when reduction can be made in registered nursing services). Putting aside the contempt remedy, that situation would present at least the theoretical possibility—not present here—of a predeprivation hearing of some kind, other than a court action to stay the cutoff. *Cf. Goldberg*, 397 U.S. at 264, 90 S.Ct. at 1018–19 (hearing required before termination of welfare benefits). In such a case, perhaps the court would have to come to grips, definitively, with whether the Act creates a property interest and whether injunctive relief, coupled with the availability of tort actions to remedy individual injuries proximately caused by the absence of nurses or athletic trainers, would satisfy procedural due process requirements, without need for § 1983 relief.

legislation before us, and thus presented a somewhat different legal issue from the one that confronts us in this case.

The question in *Cort* was whether a private litigant had the right to bring a civil action under a federal criminal statute which contained criminal penalties, but which made no provision for civil proceedings to enforce it. Congress having specifically identified the sanction for violations of the statute, namely, criminal punishment, the question was whether an additional and different means of enforcement, namely, the institution of a civil action by an aggrieved party, should be read into the statute by implication. The Court answered that question in the negative, and articulated the standards by which courts should determine whether, where only one mode of enforcement has been explicitly authorized, implicit authorization may be inferred for a second. *Cort*, 422 U.S. at 78–79, 95 S.Ct. at 2087–89.

The cases discussed by the majority which apply the *Cort* analysis present a question similar to that which arose in *Cort*. *See, e.g., In re D.G.*, 583 A.2d 160, 166–68 (D.C.1990). In *Suter v. Artist M.*, —— U.S. ——, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), on which the District relies, Congress had specified the remedy for the failure of a state agency to comply with the federal Adoption Assistance and Child Welfare Act; the Secretary of Health and Human Services was authorized to reduce or eliminate federal financial assistance to a non-complying recipient. Although the Act explicitly stated that federal funds could be terminated and contained no provision for enforcement of the Act by private litigants, the plaintiffs in *Suter* claimed that they had an implied right to sue under the Act and under 42 U.S.C. § 1983. Unsurprisingly, they lost.

The reason for the courts' rejection of claims of implied rights of action in cases like *Cort, Suter* and *In re D.G.* is readily apparent. "[I]t is an elemental canon of statutory construction that *where a statute expressly provides a particular remedy,* a court must be chary of reading others into it." *Fountain v. Kelly*, 630 A.2d 684, 690 (1993) (emphasis added) (*quoting Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19,

100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979)). "Where, as here, the legislature has specified the relief which is appropriate to redress a violation, courts are not authorized to devise different remedies; *expressio unius est exclusio alterius.*" *Mack v. United States*, 637 A.2d 430, 433 (D.C.1994) (citations omitted). When the legislature specifies only one mode of enforcement, judges should surely hesitate before holding that there are two or more, lest they intrude into a domain reserved for the legislative branch.

The situation in the present case, on the other hand, is fundamentally different. Unlike the statute at issue in *Cort v. Ash*, the Nurse Assignment Act makes no provision for criminal penalties. Nor is this case like *Suter*, for no federal financial assistance is at issue. If the Nurse Assignment Act is violated, Uncle Sam cannot cut off the flow of federal dollars in order to nudge the District into compliance. Accordingly, unless those who are injured by the District's failure to carry out its responsibilities under the Nurse Assignment Act are permitted to sue the District for redress, the Act is nothing but a cruel hoax—an unenforceable declaration which may look good on paper, but which, having no teeth, accomplishes nothing for those whom it was designed to protect.

Our elected representatives cannot be presumed to have enacted unenforceable legislation. More than two centuries ago, Sir William Blackstone articulated the "general and indisputable rule, that where there is a legal right, there is also a legal remedy, by suit or action at law, whenever that right is invaded." 3 WILLIAM BLACKSTONE, COMMENTARIES 23 (1783) (quoted in *Franklin v. Gwinnett County Public Schools*, —— U.S. ——, ——, 112 S.Ct. 1028, 1033, 117 L.Ed.2d 208 (1992)). Nineteen years later, Chief Justice Marshall wrote for the Court in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1802), that our government

> has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.

Only a few weeks ago, we "unhesitatingly" endorsed the "noble" concept as articulated

by these eighteenth century legal giants. *See Brantley v. District of Columbia*, 640 A.2d 181, 185 (D.C.1994).

A right without a remedy is therefore taboo, and the Nurse Assignment Act must be construed accordingly. There being no alternative mode of enforcement,[1] a private right of action *must* be recognized, or the act is a nullity. It would be unreasonable and, I think, presumptuous for a court to assume that the Council created a right but withheld any remedy. We cannot suppose that our elected representatives merely pretended to address what they viewed as an unacceptable condition—namely, the severe shortage of nurses at public schools and of medical personnel at athletic events—but provided no means to alleviate that condition in reality.

The majority apparently discerns no difference, for analytical purposes, between the *Cort* line of cases and the present controversy. Yet the critical factor which makes plaintiffs lose cases like *Cort* and *Suter* is not present here, whereas the decisive argument which enables Parents United to carry the day in this case was not available to the plaintiffs in *Cort* or *Suter*. Where the legislature has specified one remedy, it has implicitly precluded others—this is the teaching of the *expressio unius* maxim—and it is seldom, if ever, the province of the court to add additional enforcement mechanisms by judicial *fiat*. Moreover, where a mode of enforcement is provided in the statute, no question arises as to whether the legislature has created a right without a remedy. In such a situation, the answer to the question whether a private right of action was implied is therefore almost always a resounding No!

Where, on the other hand, the legislature has provided no remedy at all, *expressio unius* does not apply. On the contrary, courts must presume that the legislature did not intend to create a right without a remedy, for an unenforceable law is a statutory eunuch. Where no other sanction or remedy

has been provided in a statute, the question whether an aggrieved person may sue to enforce it must therefore be answered in most cases with an emphatic Yes!

The present case falls into the second of these categories. We are dealing with a statute which cannot be enforced at all unless a private right of action is recognized. Although my colleagues hold that the Nurse Assignment Act passed even the rigorous test of *Cort v. Ash*, *Cort* is distinguishable and only marginally relevant. In my opinion, the question which ought to have been posed is whether the Council may reasonably be supposed to have created a right, but precluded any remedy whatsoever to vindicate that right. The answer to that question—not a difficult one—is No!

**II.**

I agree with the majority that Parents United's Section 1983[2] claim, conceived in order to recover a heap of counsel fees, is lacking in merit. For the most part, I concur in Judge FERREN's reasoning in Part IV of his opinion. I wish, however, that he would be a bit more emphatic about it, for important values are at stake.

To me, Parents United's argument comes close to suggesting that whenever a governmental actor violates state or local law in a way that affects a plaintiff's property interest this local transgression becomes—*abracadabra; hocus-pocus-fidibus*[3]—a federal constitutional violation. While perhaps ingenious, this approach strikes at the roots of federalism, and I think we should identify and firmly reject it. Judge Easterbrook has said it best:

> A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law.... *Pennhurst* [*State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984)] held that federal

---

1. The Corporation Counsel, as attorney for the District, realistically cannot be expected to enforce the Act by bringing an action in the name of the District to restrain her own client, the District, from violating the Act.

2. 42 U.S.C. § 1983.

3. These words are said to be used by sorcerers and conjurers to enhance their accomplishments.

courts lack the authority to direct state officials to comply with state law. If *the alchemist's wand can transmute a violation of state law into a violation of the constitution, Pennhurst will be for naught, federal enforcement of state law the order of the day.*

*Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988) (en banc) (emphasis added), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989).[4]

Assuming, for the sake of argument, that the Nurse Assignment Act creates a property interest for Fifth Amendment purposes, I am at a loss to understand on these facts how the plaintiffs were deprived of property *without due process of law.* They have had an opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Indeed, they have prevailed, in large part, on their local law claim. By deciding this case, the courts of the District are giving them all the relief to which they are entitled. There is no constitutional deprivation here.

To rule in Parents United's favor on its § 1983 claim would be to vindicate judicial alchemy at the expense of federalism and neutral principles of law. The present controversy arises from the District's violation of a District of Columbia statute. It is a case involving noncompliance with local law. That is all it is. Literally as well as colloquially, we should not make a federal case out of it.

---

4. In the present case, the suit was brought in Superior Court (and not in a federal court as in *Archie*). Nevertheless, here, as in *Archie,* the plaintiffs seek to convert a state law violation into a federal constitutional one, and the unfavorable implications for basic principles of federalism are comparable to those in *Archie.*