**DIAL A CAR, INC., Appellant,**

v.

**TRANSPORTATION, INC. d/b/a Red Top Cab Company of Arlington, and Barwood, Inc., d/b/a Barwood Cab Company of Maryland, Appellees.**

No. 97–7032.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1997.

Decided Jan. 16, 1998.

James M. Loots argued the cause for appellant, with whom Mark E. Herlihy, Washington, DC, was on the briefs.

David L. Meyer argued the cause for appellees, with whom Stephen W. Grafman and A. Thomas Morris, Washington, DC, were on the brief.

Before: GINSBURG, HENDERSON, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Dial A Car, Inc. sued Transportation, Inc. and Barwood, Inc. for damages and an injunction, alleging that the defendants are operating taxicab services in the District of Columbia without a license from the D.C. Taxicab Commission. Because we hold that there is no implied private right of action under the statute prohibiting unlicensed taxicab operations in the District, we affirm the judgment of the district court dismissing this action.

I. Background

In 1986 the Council of the District of Columbia passed the Taxicab Commission Establishment Act, which established the Taxicab Commission and gave it "exclusive authority for intrastate regulation of the taxicab industry." D.C.Code § 40–1704. Among other things, the Act prohibits anyone from operating a taxicab service "within the District without first procuring all applicable licenses required by the Commission," and authorizes the Commission to fine an unlicensed operator up to $500. *Id.* § 40–1719(a). In 1987 the Taxicab Commission granted limited authority to Arlington County and Montgomery County taxicab companies to operate in the District. *See* D.C. Taxicab Comm'n Office Admin. Order No. 4 (Aug. 13, 1987).

Dial A Car is licensed by the Taxicab Commission as a sedan service providing point-to-point transportation primarily to corporate clients at a contractual rate. Transportation, Inc. is a Virginia taxicab service licensed in Arlington County, and Barwood, Inc. is a Maryland taxicab service licensed in Montgomery County. Neither of the defendants is licensed in the District.

Dial A Car claims that the defendants are violating D.C.Code § 40–1719 and Administrative Order No. 4 by providing on-call taxicab services to corporate clients in the District. In October 1993 Dial A Car sued the same defendants in the district court alleging violations of the Sherman Act, the Lanham Act, and the D.C. statute prohibiting unfair trade practices, as well as the common law torts of interference with contract and with prospective business relations. The court dismissed Dial A Car's federal claims and declined to exercise supplemental jurisdiction over its state-law claims. *See Dial A Car, Inc. v. Transportation, Inc.*, 884 F.Supp. 584 (D.D.C.1995), *aff'd*, 82 F.3d 484 (D.C.Cir. 1996).

In 1996 Dial A Car sued Transportation and Barwood again, this time in D.C. Superior Court, seeking damages and an injunction. Dial A Car asserted, among other causes of action, a private right of action for violation of D.C.Code § 40–1719. The defendants removed the case to the federal district court, which dismissed Dial A Car's claims, holding in relevant part that there is no private right of action under § 40–1719. Dial A Car appealed only that portion of the judgment. A motions panel of this court denied Dial A Car's motion to certify to the District of Columbia Court of Appeals (DCCA) the question whether there is a private right of action under § 40–1719.

## II. Analysis

■ The DCCA applies the test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether a D.C. statute creates an implied private right of action. *See, e.g., Kelly v. Parents United for the D.C. Pub. Sch.*, 641 A.2d 159, 164 (D.C.1994). In *Cort* the Supreme Court stated:

In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted—that is, does the statute create a ... right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

422 U.S. at 78, 95 S.Ct. at 2087–88 (citations omitted) (emphasis in original).

■ Of these the most important consideration is whether the legislature intended to create a private right of action. *See Suter v. Artist M.*, 503 U.S. 347, 364, 112 S.Ct. 1360, 1370–71, 118 L.Ed.2d 1 (1992); *see also Twyman v. Johnson*, 655 A.2d 850, 857 (D.C. 1995); *Parents United*, 641 A.2d at 164. Everything about the D.C. taxicab statute suggests that the Council did not intend to create such a right. The Council created the Commission specifically to be the "exclusive authority" over taxicab regulation. D.C.Code § 40–1704; *see also Edward v. D.C. Taxicab Comm'n*, 645 A.2d 600, 602 (D.C.1994); *Onabiyi v. D.C. Taxicab Comm'n*, 557 A.2d 1317, 1318 (D.C.1989). The regulatory regime provides in detail for the agency to enforce the Act. To that end the Council gave the Commission's Panel on Rates and Rules the power to establish fines for violations of Commission rules, D.C.Code § 40–1707(b)(1)(I), and gave the Commission's Panel on Adjudication the powers to investigate the taxicab industry and to adjudicate disputes between members of the industry, *id.* § 40–1707(b)(2).

The DCCA has been reluctant to find a private right of action implicit in a statute that provides for public enforcement. *See Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1004 (D.C.1994) (snow removal statute, D.C.Code § 7–901 *et seq.*); *see also Assassination Archives & Research Ctr. v. Department of Justice*, 43 F.3d 1542, 1544 (D.C.Cir.1995) (finding no private right of action under the President John F. Kennedy Assassination Records Collection Act of 1992

where the Congress created a review board to evaluate agency decisions regarding access to records); *cf. Twyman,* 655 A.2d at 856–57 (statute prohibiting retaliation in rental housing provided claimant with remedies from Rent Administrator and Rental Housing Commission); *Brantley v. District of Columbia,* 640 A.2d 181, 184 (D.C.1994) (declining to recognize tort of educational malpractice and noting that regulations governing assignment of children to school provided plaintiff with remedy). In *Parents United,* upon which Dial A Car relies, the court did find a private right of action but it did so in part upon the ground that the regulatory scheme in that case did not provide for public enforcement. *See* 641 A.2d at 164 ("In fact, the [statute] does not contain any provision for enforcement of the Act. In *Cort,* the Supreme Court indicated that such silence would leave room for an implied private remedy"). Although Dial A Car may be correct that the legislature's having provided for public enforcement of a law is not necessarily fatal to the inference that it also intended to create a private right of action—a question we need not resolve insomuch as there is no other evidence in this case to support such an inference—a provision for public enforcement is a good indication that the Council did not by its silence intend to create a parallel private right of action.

Dial A Car suggests that under *Parents United* it does not need to show that the legislature intended to create a private right of action; for this the plaintiff points to the court's statement that where a statute grants "a class of persons certain rights, it is not necessary to show an intention to create a private cause of action." 641 A.2d at 164 (quoting *Cort,* 422 U.S. at 82, 95 S.Ct. at 2090) (emphasis deleted). Read in context, however, this passage is meant to say only that the plaintiff need not show an explicit legislative purpose to create a private right of action. As subsequent case law makes clear, the legislature must at least implicitly have intended to create a private right of action before the court can countenance such a suit: "unless this … intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private

remedy simply does not exist." *Twyman,* 655 A.2d at 857 (quoting *Northwest Airlines, Inc. v. Transport Workers Union of Am.,* 451 U.S. 77, 94, 101 S.Ct. 1571, 1582, 67 L.Ed.2d 750 (1981)); *see also Fountain v. Kelly,* 630 A.2d 684, 690 (D.C.1993).

In sum, the structure of the statute clearly indicates that the Council did not intend to create a private right of action and Dial A Car points to no contrary evidence whatsoever. Although that is probably enough to dispose of the plaintiff's claim, *see Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245–46, 62 L.Ed.2d 146 (1979) (ultimate question is "whether [legislature] intended to create the private remedy asserted"), we note that the other factors in the *Cort* analysis also cut against judicial interpolation of a private right of action in § 40–1719.

First, the statute was not enacted for the "especial benefit" of the firms to be regulated, such as Dial A Car. To be sure, the Council did intend to foster a "healthy" taxicab industry and to provide taxicab companies with "just compensation." *See* D.C.Code § 40–1702(a)(2) & (a)(3). But the Council was also concerned with the general public interest, *see id.* § 40–1702(a)(1), including "a healthy degree of competition within the taxi industry," *id.* § 40–1702(b)(1)(B), and more specifically with creating a centralized system for the regulation of taxicabs, *see id.* § 40–1701(3) & (4). In light of these mixed motives we cannot conclude that the Council intended taxicab regulation for the "especial benefit" of industry members, as opposed to the taxicab-using public at large.

Second, implying a private right of action would not be consistent with the primary purpose of the statute, *viz.,* to consolidate responsibility for the regulation of the industry in a single administrative agency. *See* D.C.Code § 40–1701(3)–(6); D.C. Council, Comm. on Public Servs. & Cable Television, Report on Bill 6–159, at 1 (Nov. 19, 1985); *see also Lim v. D.C. Taxicab Comm'n,* 564 A.2d 720, 723 (D.C.1989) (centralization is "the only purpose of the bill"). Although Dial A Car suggests that a private right of action would only further the Commission's

effort to enforce the statute, giving the courts a role in its enforcement would clearly frustrate the Council's stated intention of centralizing regulation of the taxicab industry in the Taxicab Commission.

Dial A Car relies heavily upon a recent case in which the Supreme Court of Virginia entertained a suit brought by licensed taxicab companies to enjoin an unlicensed taxicab company from violating a Norfolk ordinance that prohibited unlicensed operators from using the term "taxi" in their advertisements. *See Black & White Cars, Inc. v. Groome Transp., Inc.*, 247 Va. 426, 442 S.E.2d 391 (1994). The court acknowledged both the "general rule that a penal statute or ordinance does not automatically create a private right of action," and the exception to this rule that "an injunction is appropriate relief where violation of a penal statute . . . results in special damage to property rights," such as the plaintiffs' taxicab licenses, "which would be difficult to quantify." *Id.* at 394.

*Black & White* cannot rescue Dial A Car's claim for the simple reason that it is not controlling authority in the District of Columbia. In fact, it is not even persuasive concerning District law because, as noted above, when faced with a claim to an implied right of action the DCCA applies the Supreme Court's test in *Cort v. Ash;* in *Black & White* the Supreme Court of Virginia did not even cite *Cort v. Ash* or its sequelae. Moreover, Dial A Car states that its damages are "more easily quantifiable" than the damages in *Black & White*—a nearly suicidal point because even under *Black & White* an injunction is not appropriate if the plaintiff's damages are not "difficult to quantify." 442 S.E.2d at 394.

Finally, Dial A Car renews its argument, already rejected by another panel, that this court should certify to the DCCA the question whether there is a private right of action under § 40–1719. The certification procedure is appropriate only if "it appears to the certifying court there is no controlling precedent in the decisions of the [DCCA]." D.C.Code § 11–723(a). In deciding whether to certify a case we look to whether local law is "genuinely uncertain" with respect to a dispositive question, *Tidler v. Eli Lilly &*

*Co.*, 851 F.2d 418, 426 (D.C.Cir.1988), and to whether the "case is one of extreme public importance," *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 563–64 (D.C.Cir.1993) (citation omitted). If, however, there is a "discernible path for the court to follow," then we do not stop short of deciding the question. *Tidler*, 851 F.2d at 426.

In this case we conclude again that certification is unnecessary. The DCCA precedent regarding implied private rights of action is reasonably clear and provides a "discernible path" to the resolution of this case which, although not insignificant, is not one of "extreme public importance" in the District of Columbia.

### III.   Conclusion

For the foregoing reasons we hold that there is no private right of action under D.C.Code § 40–1719. Because there is no genuine uncertainty as to the proper outcome of this issue we decline to certify the question to the DCCA. Accordingly, the order of the district court is

*Affirmed.*